# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IFIOK EQUERE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 4:07-CV-1571 CAS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is once again before the Court on federal prisoner Ifiok Equere's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence (Doc. 1). By Memorandum and Order and Partial Judgment dated November 10, 2008 (Docs. 10, 11), the Court dismissed the claims asserted in Grounds One, Two, Three and Four of movant's § 2255 motion, and held in abeyance pending an evidentiary hearing movant's assertion in Ground Five that counsel failed to file a notice of appeal despite movant's request to do so. The Court conducted an evidentiary hearing on the claims in Ground Five on January 15, 2009 and February 10, 2009.[1] For the reasons discussed below, the Court concludes that movant did not ask his attorneys to file a notice of appeal and therefore the remaining claim in the § 2255 should be dismissed.

**Background**.

On October 13, 2005, movant was indicted on two counts of false statements to the U.S. Department of Housing and Urban Development in violation of 18 U.S.C. § 1001(a)(2). On November 17, 2005, a superseding indictment was filed which added a third count, felon in

---

[1]The record includes a transcript of the portion of the evidentiary hearing held on January 15, 2009, but not the concluding portion of the hearing held on February 10, 2009.

possession of a firearm in violation of 18 U.S.C. § 922(g).  See United States v. Equere, No. 4:05-CR-573 CAS (E.D. Mo.).

Movant made an initial appearance before a United States Magistrate Judge on November 9, 2005, and indicated that retained counsel, Mr. Daniel P. Reardon, Jr., would represent him. Movant was arraigned on November 10, 2005, at which time he entered a plea of not guilty. Movant filed pretrial motions but subsequently moved to withdraw the same, which motion was granted. (Doc. 30).

The parties reached a written plea agreement under which movant would plead guilty and in return the government agreed that no further federal prosecution would be brought in the Eastern District of Missouri relative to movant's false statements to HUD in connection with mortgage loans on certain real property in St. Louis known as 8315 Eads and 5910 Bermuda. (See Plea Agreement at 2, Doc. 32 in Case No. 4:05-CR-573 CAS). The parties recommended that the 2004 version of the Sentencing Guidelines Manual apply, and recommended that the base offense level was 6 under Section 2B1.1(a)(2), and that 8 levels should be added pursuant to Section 2B1.1(b)(1)(E), because the loss amount was more than $70,000 and less than $120,000. The parties estimated movant's Total Offense Level to be 18 following a two-level deduction pursuant to Section 3E1.1. for acceptance of responsibility. Id. at 7.

Movant pleaded guilty as charged before this Court on January 24, 2006, pursuant to the Plea Agreement. The matter was set for sentencing and a Presentence Investigation Report ("PSR") was ordered (Doc. 67 in Case No. 4:05-CR-573 CAS). The final PSR states that the 2005 edition of the Guidelines Manual was used, id. ¶ 21, and recommended that movant's base offense level was 6, with 8 levels added pursuant to Section 2B1.1(b)(1)(E) because the loss was more than $70,000, (id. ¶¶

2

23-24), with a base offense level of 20 on the 18 U.S.C. § 922(g)(1) firearm charge because movant had a prior controlled substance offense conviction. (Id. ¶ 29). Movant's combined adjusted offense level was recommended to be 21, (PSR ¶ 39), with a three-level reduction for acceptance of responsibility under Section 3E1.1(a) and (b), for a total offense level of 18. (Id. ¶¶ 40, 43). Movant's criminal history determined to be a category IV, based upon a total of seven criminal history points. (Id. ¶ 64). Based on movant's Total Offense Level and criminal history category, the guideline imprisonment range was from 41 to 51 months. (Id. ¶ 93).

The Plea Agreement stated in part that movant was fully satisfied with the representation he received from defense counsel, and that movant had reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. (Plea Agreement at 15). The Plea Agreement also stated that defense counsel completely and satisfactorily explored all areas defendant had requested relative to the government's case and any defenses. (Id.). In the Plea Agreement, movant waived his right to file an appeal with respect to all non-jurisdictional issues. (Id. at 3-4). Movant also waived all rights to contest the conviction or sentence in any post-conviction proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (Id. at 4).

On August 15, 2006, movant appeared with his attorneys Mr. Reardon and Christopher M. Smith, Sr., and changed his plea to guilty. The Court sentenced movant to 37 months in custody and three years supervised release. (See Judgment, Doc. 65 in Case No. 4:05-CR-573 CAS). Subsequently, the Court granted movant's motion to amend the sentence and issued an amended judgment on August 25, 2006 (Doc. 70 in Case No. 4:05-CR-573 CAS), to include the

recommendation that movant be screened for the 500-hour intensive drug treatment program and be allowed to participate, if and when he became eligible. (Id. at 2).

No direct appeal was filed, although movant appealed the Court's denial of his motion to alter or amend judgment filed pursuant to Rule 59(e), Federal Rules of Civil Procedure. The Court's denial was summarily affirmed by the Eighth Circuit Court of Appeals in a judgment dated February 28, 2008. See United States v. Equere, No. 07-2577 (8th Cir. Feb. 28, 2008).

In Ground Five of the § 2255 motion, movant asserts that trial counsel were ineffective for failing to honor movant's expressed desire to file a direct appeal concerning the amount of restitution. Movant testified at the hearing, as did his former attorneys Mr. Daniel P. Reardon, Jr. and Mr. Christopher Smith, and Mr. Charles Smith, a paralegal who assisted Mr. Christopher Smith.

**Legal Standard**.

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

"To establish ineffective assistance of counsel within the context of section 2255, . . . a movant faces a heavy burden." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). To prevail on an ineffective assistance of counsel claim, a movant must show both that counsel's

4

performance was deficient and that he was prejudiced by the deficient performance. See McReynolds v. Kemna, 208 F.3d 721, 722 (8th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Under Strickland, a court considers whether counsel's performance was reasonable "under prevailing professional norms" and "considering all the circumstances." Burkhalter v. United States, 203 F.3d 1096, 1098 (8th Cir. 2000) (quoting Strickland, 466 U.S. at 688). It is presumed that counsel acted reasonably, and much deference is granted to counsel's performance. Id.; see Parkus v. Bowersox, 157 F.3d 1136, 1139 (8th Cir. 1998). To overcome this presumption, movant must prove that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

It is well established that the failure of an attorney to file an appeal "after being instructed to do so . . . constitutes ineffective assistance" even without a showing of prejudice or likely success on appeal as is required for other § 2255 petitions. Barger v. United States, 204 F.3d 1180, 1181 (8th Cir. 2000); see also Holloway v. United States, 960 F.2d 1348, 1356-57 (8th Cir. 1992) ("No inquiry into prejudice or likely success on appeal is necessary."). If movant asked for an appeal, his lawyers violated his Sixth Amendment rights by failing to complete the "ministerial task" of filing a notice of appeal. See Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). "The appropriate remedy is to remand for re-sentencing, thus affording the [movant] an opportunity to take a timely direct appeal." Barger, 204 F.3d at 1182.

For such a claim to succeed, however, movant must show that he instructed his counsel to file an appeal. Barger, 204 F.3d at 1182. "A bare assertion by the petitioner that [ ]he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to

5

be more credible indicates the contrary proposition." Id.; see also Rodriguez v. United States, 964 F.2d 840, 842 (8th Cir. 1992) (per curiam).

**Testimony Presented at the Evidentiary Hearing**.

**A. Movant's Testimony**

At the evidentiary hearing, movant testified that he was represented during the underlying criminal action by attorneys Daniel Reardon and Christopher Smith. Movant hired Mr. Smith after having entered his guilty plea. (Hearing Tr. at 16).

Movant testified that prior to his sentencing, on the day of sentencing, he spoke with Christopher Smith about his disagreement with the restitution amount, and Mr. Smith told him not to worry about it because he could bring it up on appeal, but movant testified he did not make any response to this statement. (Tr. at 6-8). Movant testified that within a few days of sentencing, he told paralegal Charles Smith in a telephone conversation that he wanted to appeal the restitution amount, and instructed Charles Smith to convey that information to Christopher Smith. (Tr. at 8-9). Movant testified that Charles Smith responded, "Okay." (Tr. at 24).

Movant also testified that on August 22, 2006, he told Mr. Reardon that he wished to appeal the restitution amount, (Tr. at 11), and that whenever he subsequently met with Mr. Reardon concerning a pending state case, he spoke to him regarding the appeal. In response to a question whether movant ever specifically told Mr. Reardon that movant wanted him to file a notice of appeal, movant stated, "I believe I did, yes." (Tr. at 12).

On cross-examination, Movant testified that he had entered into a plea agreement, and acknowledged that the plea agreement contained a waiver of the right to appeal, including with respect to sentencing issues. (Tr. at 15). Movant agreed that the amount of restitution would be a

6

sentencing issue. (Id. at 16). Movant testified that within a week of sentencing, he was in Mr. Reardon's office and told him that he wanted to appeal the amount of restitution. (Tr. at 21-22). Movant could not recall Mr. Reardon's response. (Id. at 22). Movant testified that he didn't discover that no notice of appeal had been filed until his appointed attorney in the § 2255 case, Mr. Welby, informed him within the four weeks prior to the hearing. (Tr. at 27-28).

Movant testified that after he was in prison, his girlfriend, Janell Jason, asked Mr. Reardon about the appeal and was told that nothing had been done. (Tr. at 30). Movant never wrote a letter to Mr. Reardon or Mr. Smith from prison concerning the appeal. (Id.). Movant testified that he did not wish to appeal his guilty plea or his sentence, but rather the amount of restitution. (Tr. at 31). Movant conceded that he signed the plea agreement with a stipulation that the offense level was 21 and the loss range was $70,000 to $120,000, but denied that he agreed to the amount of loss or understood that he was agreeing to the amount of loss. (Tr. at 33-34).

**B. Mr. Reardon's Testimony**

Daniel Reardon, who has practiced law since 1955, testified that he represented movant in the underlying criminal case and recommended that he enter a plea of guilty. Mr. Reardon testified that he negotiated the plea agreement and discussed it with movant prior to entry of the guilty plea, and that he was satisfied movant understood and agreed to the term of the plea agreement. Mr. Reardon testified that the plea agreement specified HUD's losses were $58,401 on the 8315 Eads property, and $46,279 on the 5910 Bermuda property, and that movant raised no objections to these loss amounts in the plea agreement.

Mr. Reardon testified that several presentence investigation reports ("PSR") were prepared, and the second final PSR (Ex. 3) included a loss of only $2,316.49 on the Eads property, but a

7

subsequent Declaration of Victim Losses from Wells Fargo Mortgage dated August 1, 2006 showed a loss of $58,403 on the Eads property. Mr. Reardon testified that the final PSR, dated August 11, 2006, included information from the Wells Fargo Declaration of Victim Losses, and was consistent with the restitution amounts in the plea agreement. Mr. Reardon testified that he met with movant to discuss the final PSR, and did not recall any discussion concerning restitution issues.

Mr. Reardon testified that he did not recall movant asking him to file an appeal, and had no recollection of discussing appeal issues. Mr. Reardon testified that movant did not insist on an appeal and so he did not file an appeal, and that he did not believe there were any issues for appeal. Mr. Reardon testified that he has filed appeals for clients when they wished to, even if he did not believe there were any issues for appeal. Mr. Reardon also testified that he did not recall movant asking him to file an appeal within ten day of the sentencing, nor did he recall any discussion of an appeal of the underlying criminal case during his subsequent contacts with movant on a state court criminal matter, at the state court sentencing on November 30, 2006, or at any other time.

On cross-examination, Mr. Reardon testified that while he did not remember specifics of conversations concerning changes in or accuracy of the various PSRs, he did remember that he had no discussion with movant of any claim of error regarding the proper loss amount.

On redirect examination, Mr. Reardon testified that on August 22, 2006, within the time for filing a notice of appeal, he filed a motion to amend the judgment in the underlying criminal case to recommend that movant be screened for the RDAP program, but has no recollection of movant asking for an appeal at that point. Mr. Reardon also testified that he wrote a letter to the Court on August 15, 2006, asking that movant be housed either in Greenville, Illinois, or at FPC Marion in

Marion, Illinois. Both the motion and the letter request were granted, but Mr. Reardon testified he had no recollection of discussing an appeal with movant.

### C. Mr. Christopher Smith's Testimony

Mr. Christopher Smith, who has practiced law since 1976, testified that he was retained by movant to assist with the sentencing, following movant's entry of a guilty plea. Mr. Smith testified that he sent movant copies of all documents, and he discussed all relevant issues with movant, including an appeal, prior to sentencing. Mr. Smith testified that movant called him on a regular basis, described movant as being an assertive individual who was not shy, and stated that movant "objected to everything."

On cross-examination, Mr. Smith testified that movant originally raised questions about the amount of loss figures in the PSR, and he sat down with movant to "hammer the numbers" to try to get them lower. Mr. Smith testified that the original loss on the Eads property at the time of the plea, prior to his entry in the case, was approximately $58,000, which was later lowered in an interim PSR to approximately $2,000 as a result of an error that was corrected, and in the final PSR was again approximately $58,000. Mr. Smith characterized the $2,000 loss figure in the interim PSR as a "windfall" to movant that was an error. Mr. Smith testified emphatically that movant did not ever raise a challenge to the loss figures in the final PSR.

Mr. Smith testified that his paralegal, Charles Smith, spoke to movant a lot and told him two to three times each week things that movant had said, but at no time did Charles Smith ever mention movant's desire to file an appeal. Mr. Smith testified that while he did not believe movant had any issues for appeal, in the past, if a client has wished to file a non-meritorious appeal he would absolutely file the appeal, as to do otherwise would be malpractice. Mr. Smith testified that he

9

remembered very clearly he had absolutely no discussions with movant post-appeal, and that movant did not ever request that he file an appeal.

### D. Mr. Charles Smith's Testimony

Mr. Charles Smith testified he is a paralegal who works with attorney Christopher Smith, and he acquired movant as a client. Mr. Smith testified he had a substantial number of communications with movant, most of which concerned the loss amounts, and often acted to pass documents back and forth between Mr. Christopher Smith and movant.

Mr. Smith testified that he was present at movant's sentencing, and talked briefly with movant after the sentencing. Mr. Smith testified that movant did not make any request to file a notice of appeal, and did not ask any questions about a notice of appeal. Mr. Smith testified that movant did ask about getting into the BOP's drug program, but at no time did movant ask Mr. Smith to file a notice of appeal. Mr. Smith testified he had no communications of any kind with movant after the day of sentencing.

**Discussion**.

It is movant's burden to show that he was not adequately notified of his right to file an appeal, and that he instructed his attorney to file an appeal. Holloway, 960 F.2d at 1357. The Court finds movant can do neither. Movant testified that he read the plea agreement and understood that it contained a waiver of appeal, including on sentencing issues, and that the amount of loss was a sentencing issue. This is consistent with the testimony of Mr. Reardon, the only attorney representing movant at the plea stage of the case, who testified that he discussed the plea agreement with movant prior to the plea and was satisfied that movant understood and agreed to it.

10

The Court finds movant's testimony, that his attorneys failed to file a notice of appeal despite being instructed to do so, to be not credible. Although movant testified that he asked both Mr. Reardon and paralegal Mr. Charles Smith to file an appeal, this is entirely inconsistent with the testimony of Messrs. Reardon, Smith and Smith, all of whom testified that movant did not ask them to or instruct them to file an appeal. Mr. Reardon testified repeatedly that he had no recollection of movant asking for an appeal at any time, and Mr. Christopher Smith and Mr. Charles Smith testified emphatically that movant did not ask for an appeal at any time, and that neither of them had any contact with movant after the date of sentencing.

The Court finds the testimony of movant's former attorneys and paralegal Mr. Smith to be more credible than movant's testimony. The testimony of Mr. Reardon and Messrs. Smith was consistent with respect to movant's failure to request an appeal, and the Smiths in particular testified with firm conviction that movant had never raised the issue of an appeal. Movant is an articulate, college-educated individual who testified confidently and without hesitation, with great clarity and recall of detailed facts in general and specifically on issues concerning the loss amounts. In contrast, when movant testified concerning the issue of an appeal, his testimony was more hesitant and less clear. For example, after testifying that he asked Mr. Reardon to file an appeal within a week after the sentencing, he was asked what Mr. Reardon's response was. Movant testified after a lengthy pause that he did not know and could not recall Mr. Reardon's response. This response was markedly different than movant's mode of response to all other questions posed to him. Movant's credibility is also undercut by the fact that he pled guilty to making false statements to HUD in the underlying criminal case and has a significant criminal history. The Court therefore finds movant's

testimony that he asked his attorneys to file a notice of appeal to be not credible and not worthy of belief.

The Court notes that neither of movant's attorneys testified they discussed an appeal with movant. The Supreme Court has instructed that in cases such as these where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). If not, the district court should determine whether the failure to consult was unreasonable. Id.

For purposes of this opinion, the Court will assume that movant's counsel did not consult with him regarding an appeal. Any such lack of consultation, however, did not result in ineffective assistance of counsel. The Court finds this case is almost identical to the example given in Flores-Ortega of when a consultation is not necessary. Id. Here, movant conferred with his attorney who negotiated and advised him regarding the terms of a plea agreement; movant was counseled regarding the effect of the waiver on his right to appeal; movant voluntarily entered into the plea agreement knowing the terms thereof; movant pleaded guilty; the Court sentenced movant on the low end of the sentencing range for which he bargained;[2] movant did not request or express an interest in appealing; and counsel concluded there is no basis for an appeal. Although movant was and still is unhappy about the loss amount, he knew about the loss amount from prior to the entry of his guilty

---

[2] Because movant had a criminal offense category of IV and a final adjusted total offense level of 18, the final PSR recommending that his sentencing guideline range was 41 to 51 months, but the Court sentenced movant to 37 months. Movant was actually sentenced at offense level 17, and the 37-month sentence he received was at the low end of the Guidelines range for an offense level of 17.

plea, was counseled about the loss amount, and entered a voluntary plea that contained fact supporting the loss amount after having been informed of his alternatives.

The Court finds and concludes that movant did not demonstrate to counsel an interest in filing an appeal, and under the circumstances of this case, a rational defendant would not have desired an appeal. Therefore, the Court finds and concludes that counsel was not ineffective for failing to consult with movant about an appeal. See Flores-Ortega, 528 U.S. at 484. As for the second prong of Strickland, movant has also failed to carry his burden of demonstrating that but for his counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id.

**Conclusion**.

As discussed above, the Court finds movant did not express a desire that his attorneys file an appeal on his behalf. Further, even if the Court were to conclude that movant was not properly consulted regarding an appeal, under the circumstances of this case, any such lack of consultation would not have been unreasonably deficient such that it would rise to the level of a constitutional violation. Finally, movant has not shown that he did not file a timely appeal as a result of his counsel's lack of consultation. For these reasons, movant's claims in Ground Five that his counsel failed to file a notice of appeal after being asked to do so should be denied and dismissed.

**Certificate of Appealability**.

Under 28 U.S.C. § 2253, "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529

U.S. 473, 484-85 (2000); see Miller-El v. Cockrell, 537 U.S. 322, 342 (2003) ("The question [on the certificate of appealability determination] is the debatability of the underlying constitutional claim, not the resolution of that debate.").

Upon careful review of the record, the Court finds movant has not demonstrated that reasonable jurists would (1) find the Court's assessment of the constitutional claims debatable or wrong; or (2) find it debatable whether the Court was correct in its procedural rulings, and therefore the Court does not reach the issue whether reasonable jurists would find it debatable that the petition states a valid claim of the denial of a constitutional right. See Slack, 529 U.S. at 484-85. The Court therefore concludes movant is not entitled to a certificate of appealability on his dismissed claims.

Accordingly,

**IT IS HEREBY ORDERED** that movant Ifiok Equere's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody is **DENIED** with respect to movant's claims in Ground Five that counsel failed to file a notice of appeal. [Doc. 1]

An appropriate final judgment will accompany this memorandum and order.

*/s/ Charles A. Shaw*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  24th  day of February, 2009.